22-2080-cv
*Rapaport v. Barstool Sports Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# **SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand twenty-four.

PRESENT:
> RICHARD C. WESLEY,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

---

Michael Rapaport,

> *Plaintiff-Counter-Defendant-Appellant*,

Michael David Productions Inc.,

> *Plaintiffs-Counter-Defendants-
> Counter-Claimant-Appellant,*

v.   22-2080-cv

Barstool Sports Inc.,

> *Defendant-Counter-Claimant-
> Counter-Defendant-Appellee,*

Adam Smith, Kevin Clancy, Eric Nathan, David Portnoy,

> *Defendants-Counter-Claimants-Appellees.*

---

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | RICHARD S. BUSCH, King & Ballow, Century City, CA. |
| FOR DEFENDANTS-APPELLEES: | AARON J. MOSS (Ricardo P. Cestero, Steven Stein, *on the brief*), Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, CA. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Michael Rapaport and Michael David Productions Inc. (collectively, "Rapaport") appeal from the judgment of the district court, entered on September 14, 2022, granting summary judgment to Defendants-Appellees Barstool Sports Inc. ("Barstool") and Barstool employees Adam Smith, Kevin Clancy, Eric Nathan, and David Portnoy (collectively with Barstool, "Barstool Defendants") on Rapaport's defamation claim. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

Barstool, founded in 2004 by Portnoy, produces blogs, videos, and podcasts; sells merchandise; and has its own channel on SiriusXM, with a loyal following of fans who call themselves "Stoolies." Barstool has become both a media company and a comedy brand. It is "[k]nown for its original takes and unfiltered view of most everything" and is "the controversial brand that people love or love to hate." Supp. App'x at 1224. Rapaport is a well-known actor, performer, and comedian who has appeared in dozens of movies and television series. Rapaport is also known for providing his "unfiltered views" on politics, sports, and pop culture via short

2

video "rants," which he uploads to his social media handles, including Twitter, Instagram, and YouTube. App'x at 2247.

In 2017, Rapaport and Barstool entered into a talent agreement. Within months of joining Barstool, Rapaport began feuding with Barstool personality Adam "Smitty" Smith over allegedly unpaid sports bets. The dispute led to a barrage of tweets back and forth, with Rapaport ultimately accusing Smith of taking steroids and Rapaport tweeting, "if you call yourself a f**king stoolie for real, you've already lost in life." Supp. App'x at 543 (alteration added). Portnoy subsequently texted Rapaport that Barstool was firing him and posted on Twitter a video explaining that he was firing Rapaport because Rapaport had "insult[ed] our entire f**king fan base" and Stoolies are the reason "we all have jobs." App'x at 2286–87 (second alteration added). After Rapaport was terminated from Barstool, the parties continued to trade crude and vulgar insults on the internet.

Rapaport then brought an action in the district court asserting eleven claims, including for fraud, defamation, and breach of contract. The defamation claim, which is at issue here, was based on more than seventy-five written, audio, and visual comments made by Barstool personalities on social media and Barstool platforms. Barstool asserted a breach of contract counterclaim against Rapaport. Rapaport moved for summary judgment on six of his eight breach of contract claims, his two fraud claims, his defamation claim, and Barstool's counterclaim. Barstool cross-moved for summary judgment on the fraud and defamation claims. The district court granted Barstool's motion for summary judgment in its entirety and denied Rapaport's motion. *See Rapaport v. Barstool Sports, Inc.*, 18 Civ. 8783 (NRB), 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021). With respect to the defamation claim, the district court held that Rapaport failed

3

to establish that the challenged statements were actionable statements of fact. *Id*. at \*10–22. Rapaport filed a motion for reconsideration and alternatively for certification of interlocutory appeal, which the district court denied. *See Rapaport v. Barstool Sports, Inc.*, 18 Civ. 8783 (NRB), 2021 WL 2635821 (S.D.N.Y. June 25, 2021). The parties stipulated to the dismissal with prejudice of their respective breach of contract claims. The district court granted the stipulated dismissal and entered final judgment. Rapaport brought this appeal challenging the district court's decision solely with respect to his defamation claim.[1]

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008); *see also Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993) ("[O]nly statements alleging facts can properly be the subject of a defamation action." (internal quotation marks and citations omitted)).

"[T]he determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985). In distinguishing between opinion and fact, New York courts generally consider: "(1) whether the specific language in issue has a precise meaning

---

[1] "We review an award of summary judgment *de novo*, and will uphold the judgment if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." *Glob. Network Commc'ns, Inc. v. City of New York*, 562 F.3d 145, 150 (2d Cir. 2009).

4

which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (alterations adopted) (internal quotation marks and citations omitted); *accord Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 178–79 (2d Cir. 2000). Courts need not follow a rigid formula when evaluating these factors; instead, "[a] court must have the flexibility to consider the relevant factors and to accord each the degree of importance which the specific circumstances warrant." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 291–92 (1986).

"[T]he Court of Appeals of New York has consistently focused its analysis on the overall context in which the complained-of assertions were made." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000). This "context" factor includes not only "the immediate context in which the disputed words appear," but also "the larger context in which the statements were published, including the nature of the particular forum." *Brian*, 87 N.Y.2d at 51.

If a statement is found to contain opinion, the court must also examine "whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). As we have explained,

> Pure opinion is a "statement of opinion which is accompanied by a recitation of the facts upon which it is based" or does not imply that it is based on undisclosed facts. Mixed opinion, on the other hand, is an opinion that *does* imply a basis in undisclosed facts, or facts known only to the author, and is actionable.

*Id*. (quoting *Steinhilber*, 68 N.Y.2d at 289–90). Ultimately, "[t]he dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts about

5

the plaintiff." *Gross*, 82 N.Y.2d at 152 (alteration adopted) (internal quotation marks and citation omitted).

Here, Rapaport contends that the following categories of online statements by Barstool about him are actionable for defamation under New York law: (1) statements alleging that Rapaport is racist and a fraud; (2) statements alleging that Rapaport had stalked and physically abused his ex-girlfriend; and (3) statements alleging that Rapaport has herpes. Thus, Rapaport argues that the district court erred in determining that each of the statements at issue constituted non-actionable opinion given the overall context in which the statements were made. We disagree and conclude, for substantially the same reasons set forth in the well-reasoned and thorough opinion of the district court, that summary judgment was properly granted on the defamation claim.

First, as the district court correctly determined, Barstool's accusations of racism and fraud are non-actionable because they lack a clearly defined meaning and, in this context, are incapable of being objectively proven true or false. *See Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976) (holding that the terms "'fascism' and 'radical right' . . . are concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity"). Moreover, none of Barstool's statements implied that it was based on undisclosed facts known to the speaker. Therefore, no reasonable reader could find that the statements alleging racism or fraud were conveying facts about Rapaport, as opposed to reflecting the opinion of the speaker. *Gross*, 82 N.Y.2d at 155 ("[A]ssertions that a person is guilty of 'blackmail,' 'fraud,' 'bribery' and 'corruption' [can], in certain contexts, be understood as mere, nonactionable 'rhetorical hyperbole' or 'vigorous epithet[s].'" (citations omitted)); *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (holding that statements in articles, which referred to materials authored by

6

the plaintiff as "racist writings," were "such that a reasonable reader would have concluded that he or she was reading opinions, and not facts, about the plaintiff"); *Russell v. Davies*, 97 A.D.3d 649, 650–51 (2d Dep't 2012) (holding that news stories that described an essay written by the plaintiff as "racist" and "anti-Semitic" were non-actionable opinions, rather than actionable facts).

Second, in determining that the other statements at issue—namely, that Rapaport has herpes, is a stalker, or has committed domestic abuse—were also non-actionable opinions, the district court properly considered the immediate and the broader context in which each challenged statement was delivered to determine whether a reasonable audience would understand the statement to be an assertion about Rapaport intended to convey factual accuracy. *See Brian*, 87 N.Y.2d at 52–53. In particular, in evaluating the context of the statements in detail, the district court explained:

> [T]he statements were largely laden with epithets, vulgarities, hyperbole, and non-literal language and imagery; delivered in the midst of a public and very acrimonious dispute between the Barstool Defendants and Rapaport that would have been obvious to even the most casual observer; and published on social media, blogs, and sports talk radio, which are all platforms where audiences reasonably anticipate hearing opinionated statements.

*Rapaport*, 2021 WL 1178240, at *15. We agree with the district court's analysis.

On appeal, Rapaport attempts to isolate and emphasize individual factors that the court considered as part of its totality of the context analysis. He suggests that "the [d]istrict [c]ourt incorrectly gave a disproportionate amount of weight to the fact that the statements at issue here were made on the internet." Appellant's Br. at 22; *see also id*. at 23 ("The anomalous result of the [d]istrict [c]ourt's ruling, if upheld, is that no one will be able to viably pursue a defamation claim, so long as the libelous statement is vulgar and made over the internet."). To be sure, the

7

appearance of these statements in an online forum that is "usually dedicated to opinion does not automatically insulate the author from liability for defamation." *Brian*, 87 N.Y.2d at 52 (emphasizing that New York courts "have never suggested that an editorial page or a newspaper confers a license to make false factual accusations and thereby unjustly destroy individuals' reputations"); *see also Krusen v. Moss*, 174 A.D.3d 1180, 1182 (3d Dep't 2019) (holding that a statement on Facebook that the plaintiff was "pilfering free gas from taxpayers" was "susceptible to a defamatory meaning, inasmuch as it conveys, at a minimum, serious impropriety and, at worst, criminal behavior" (alterations adopted) (internal quotation marks and citations omitted)). Instead, "the forum in which a statement has been made, as well as the other surrounding circumstances comprising the 'broader social setting,' are only useful gauges for determining whether a reasonable reader or listener would understand the complained-of assertions as opinion or statements of fact." *Brian*, 87 N.Y.2d at 52.

Rapaport's suggestion, however, mischaracterizes the district court's analysis. As summarized above, the district court did not find that the statements at issue were non-actionable opinions solely because the statements were made on internet platforms; rather, the district court's determination was based on careful evaluation of **all** of the surrounding circumstances. *See Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) ("The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction.").

For example, the district court appropriately considered that the statements at issue were made in the context of a hostile, vulgar, and hyperbolic feud between Rapaport and Barstool as a

8

result of his termination. *Rapaport*, 2021 WL 1178240, at *15. That context was one within which even certain ostensibly factual statements could be reasonably understood as part of a "tasteless effort to lampoon" because they were made "[i]n the emotional aftermath of a [situation] when animosity would be expected to persist" and in circumstances where "an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber*, 68 N.Y.2d at 294–95 (alterations adopted) (internal quotation marks and citations omitted).

In addition to considering the overall context of the feud, the district court appropriately considered that the statements at issue "were largely laden with epithets, vulgarities, hyperbole, and non-literal language and imagery." *Rapaport*, 2021 WL 1178240, at *15. For example, as the district court noted, a number of the challenged statements were made in "a February 26, 2018 online video entitled 'Fire Rap,' which is a six-minute long so-called 'diss track' of the Barstool Defendants rapping a constant stream of insults and slurs about Rapaport against a backdrop of unflattering video clips and images of Rapaport." *Id.* at *15. The video also "reproduces the clip of Portnoy publicly announcing that Rapaport had been fired as well as the photoshopped picture that Rapaport tweeted in response, wherein Rapaport appears to engage in anal sex with Portnoy," along with several other images and video clips that were "obviously doctored, further underscoring the non-factual nature of the piece." *Id.* at *15–16. The nature and tone of the surrounding language can function as a strong indicator to the reasonable reader that the statement is not expressing or implying any facts. *See 600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143–44 (1992) (noting that the speaker's "rambling, table-slapping monologue" during a "heated public hearing" meant that a claim of fraud could not be reasonably understood as a factual statement); *Hobbs v. Imus*, 266 A.D.2d 36, 37 (1st Dep't 1999) ("When considered in the context

9

of the ribald radio 'shock talk' show in which they were made, it is clear that the complained of statements would not have been taken by reasonable listeners as factual pronouncements but simply as instances in which the defendant radio hosts had expressed their views over the air in the crude and hyperbolic manner that has, over the years, become their verbal stock in trade."); *DePuy v. St. John Fisher Coll.*, 129 A.D.2d 972, 973 (4th Dep't 1987) ("A certain amount of vulgar name-calling is tolerated, on the theory that it will necessarily be understood to amount to nothing more." (internal quotation marks and citation omitted)).

Finally, the district court aptly noted that some of the opinions at issue are accompanied by the facts upon which they are based, thus rendering them non-actionable. *See Gross*, 82 N.Y.2d at 154 ("[A] proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture."). For example, Rapaport challenges the statement in the February 19, 2018 video in which Portnoy states that Rapaport "has a stalking charge or something in his past." App'x at 190. However, as Portnoy is making the comments, the video displays a news article explaining that Rapaport was sentenced for harassment of his ex-girlfriend.[2] In this context, the district court correctly concluded that "[a] reasonable viewer would understand Portnoy's comments to be conveying his (erroneous) understanding of the charges described in the article that was simultaneously presented to the audience, and thus the comments are protected opinions." *Rapaport*, 2021 WL 1178240, at *18.

In sum, we conclude that the district court, in analyzing each of the statements at issue, properly considered "the content of the whole communication, its tone and apparent purpose,"

---

[2] Rapaport was arrested and pled guilty to aggravated harassment of his ex-girlfriend, which included repeatedly calling her and showing up to her apartment late at night.

10

*Immuno AG. V. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991).  We emphasize, however, that our decision should not be viewed as treating any one factor or characteristic as dispositive.  Rather, we affirm because the district court carefully and correctly determined on this record that no reasonable reader or listener could have viewed any of the challenged statements to be conveying any expressed or implied facts about Rapaport.  Therefore, summary judgment on the defamation claim was warranted in favor of the Barstool Defendants.

\* \* \*

We have considered Rapaport's remaining arguments and find them to be without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court